1  SAUL D. BRENNER (SBN 130909)
2  *sbrenner@loeb.com*
   KYLE PETERSEN (SBN 307483)
3  *kpetersen@loeb.com*
4  LOEB & LOEB LLP
   10100 Santa Monica Boulevard, Suite 2200
5  Los Angeles, California  90067-4120
6  Telephone:  310-282-2000
   Facsimile:   310-282-2200
7
8  Attorneys for Plaintiff
   GRABIT INTERACTIVE MEDIA,
9  INC., a Delaware corporation, dba
10  KERV or KERV INTERACTIVE

11              UNITED STATES DISTRICT COURT
12          FOR THE CENTRAL DISTRICT OF CALIFORNIA
13
14                   WESTERN DIVISION

15  GRABIT INTERACTIVE MEDIA,        Case No.
16  INC., a Delaware corporation, dba
17  KERV, dba KERV INTERACTIVE,      **COMPLAINT FOR:**

18            Plaintiff,             **(1) BREACH OF WRITTEN
19                                       CONTRACT AND SPECIFIC
           v.                            PERFORMANCE THEREOF;**
20
21  ANDREW WELCH, an individual,     **(2) ANTICIPATORY BREACH OF
                                         CONTRACT AND SPECIFIC
22            Defendant.                 PERFORMANCE THEREOF;**
23                                   **(3) DECLARATORY RELIEF;
24                                       AND**
25                                   **(4) INJUNCTIVE RELIEF**
26
                                     **DEMAND FOR JURY TRIAL**
27
28

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

COMPLAINT

Plaintiff GRABIT INTERACTIVE MEDIA, INC., a Delaware corporation, doing business as KERV INTERACTIVE and KERV ("KERV"), hereby alleges as follows:

## SUMMARY OF THE CASE

1. This lawsuit concerns the damaging, unlawful, and malicious behavior of defendant Andrew Welch ("Defendant"), a former employee and former consultant of KERV who has materially breached a number of important contractual duties that he owes to KERV under the terms of a written settlement agreement that the parties signed only a few months ago. Although KERV has honored all of its obligations under that agreement (including making the required payment to Defendant), Defendant has materially defaulted on multiple duties that he owes to KERV under the referenced settlement agreement, causing substantial damage in the process. Moreover, Defendant has recently demanded that KERV pay him vast additional sums that he is not owed and return to him hundreds of thousands of shares of stock in KERV that Defendant freely sold for fair and adequate consideration. Further, Defendant has purported to renounce and disavow the binding effect of the settlement agreement that he willingly signed – and for which he freely accepted the agreed-upon financial consideration – not long ago.

2. Worse still, Defendant is threatening to wreak even greater havoc if his misplaced demands are not met. Beyond the considerable harm that Defendant has already inflicted on KERV for no reason other than to serve his own greed and ego, Defendant is attempting and threatening to cause yet additional harm to KERV, its business, its reputation, and its professional relationships (including vital partner and client relationships). Indeed, Defendant has already engaged in wholly improper and damaging communications to KERV employees, investors and formal advisors, and has threatened to engage in additional acts of interference that would cause enormous and irreparable harm to KERV.

/ / / / /

3.    By this action, KERV seeks damages sufficient to compensate KERV for all of the economic and reputational injuries that it has suffered and will suffer as a consequence of Defendant's improper conduct.  KERV also seeks the assistance of the Court to prohibit and prevent Defendant from carrying out his vindictive and unlawful threats to cause ruinous and lasting damage to KERV, its business, its reputation, and its professional relationships.

## THE PARTIES

4.    KERV is a Delaware corporation that is headquartered and maintains its principal place of business in the State of Texas.  In addition to Grabit Interactive Media, Inc., KERV conducts business under the trade names KERV INTERACTIVE and KERV.

5.    Defendant is an individual residing in Los Angeles County, California. KERV is informed and believes that Defendant resides in Burbank, California, within zip code 91605.

## JURISDICTION AND VENUE

6.    This Court has diversity jurisdiction in this matter, pursuant to Title 28, United States Code, Section 1332(a)(1), because this is a civil action between citizens of different States, in that KERV is a Delaware corporation with its primary place of business in the State of Texas, and Defendant is a citizen and resident of California who is domiciled in California.  Additionally, complete diversity of citizenship between the litigants exists; and the amount in controversy, exclusive of interest and costs, exceeds the $75,000 jurisdictional minimum.

7.    Venue is proper in the Central District of the State of California pursuant to Title 28, United States Code, Sections 1391(b)(1), 1391(b)(2), and 1391(c)(1).

8.    This Court also has personal jurisdiction over the parties because, among other reasons, Defendant is a resident of the State of California and of this judicial district.  Additionally, KERV is informed and believes that Defendant

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

committed the breaches of contract and other acts complained of herein within the State of California and the County of Los Angeles.

## FACTUAL ALLEGATIONS

**A.      Overview of KERV's Business.**

9.      KERV is a young, thriving, award-winning private company that provides important and valuable services for its clients and partners in advertising, media and other industries by, among other services, deploying state-of-the-art, patented technology that KERV owns and operates.  KERV's patented technology delivers substantial benefits and economic value to its clients in the linear television and streaming spaces by, among other things, identifying objects in video and making such objects interactive and shoppable by viewers and consumers.  KERV's patented interactive platform utilizes advanced artificial intelligence and machine learning techniques to create and distribute interactive experiences through video. Its technology and products provide significant benefits to its partners and customers by, among other services, powering interactive, shoppable ads and product placements that are integrated into programming; facilitating and enabling online purchases by viewers using remote technology; and generating valuable data analytics on the performance of digital video content.

**B.      Defendant's Past Association with KERV.**

10.      Defendant worked for KERV several years ago, but he has not been an employee or consultant of KERV since 2019.  Defendant transferred and assigned all of his erstwhile rights and interests in various patents and technology to KERV, pursuant to a series of fully executed written contracts and assignments.  Defendant made all such transfers and assignments of intellectual property rights in exchange for fair, adequate and valuable consideration, which KERV paid Defendant in full.

**C.      The Settlement Agreement Reached in 2022.**

11.      In the summer of 2022, KERV, Defendant, and certain other individuals and entities entered into that certain written contract entitled

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

"CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (the "Agreement"). The Agreement was executed by all of the contracting parties, including, but not limited to, KERV and Defendant. The Agreement became effective as of July 15, 2022 ("Effective Date"). The Agreement was supported by valid consideration, which was paid in full and in a timely manner to Welch. The Agreement was and is a valid and binding written contract that, by its terms, is governed by California substantive law. (Agreement, ¶ 23.) The Agreement remains in force as of the date of this Complaint. A true and correct copy of the Agreement is attached hereto as Exhibit 1 to this Complaint and is incorporated herein in full.

        12.     Under the terms of the Agreement, Defendant "irrevocably, unconditionally, completely, and forever release[d] and discharge[d]" a broad range of "Released Claims" against KERV and the other contracting parties, whether such claims were actual or potential, vested or contingent, real or imagined, known or unknown. (Agreement, ¶ 3.2.) The "Released Claims" that Defendant expressly released and relinquished under the Agreement expressly include and encompass all of the following:

> any and all claims or causes of action (including Unknown Claims as defined below), debts, demands, disputes, rights, suits, matters, issues, damages, obligations or liabilities of any kind, nature, and/or character whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liabilities whatsoever), whether known or unknown, whether under federal, state, local, statutory, common law, foreign law, or any other law, rule or regulation, whether fixed or contingent or absolute, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, discoverable or undiscoverable, asserted or that have been, could or might have been, or in the future might be asserted by the releasing party against the released persons or entities based upon, arising out of, or related to the facts, transactions, events, occurrences, statements, alleged mismanagement and/or misconduct, acts, omissions, or failures to act, concealment, misrepresentation, violation of law or other matter which was or could have been alleged in or embraced or otherwise referred to or encompassed by the Dispute, regardless of upon what legal theory based, including, without limitation, claims for negligence, gross negligence, recklessness, fraud, breach of fiduciary duty, breach of duty of care and/or loyalty or violations of the common law, administrative rule or regulation, tort,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

contract, equity, or otherwise of any state or federal statutes, rules, or regulations or common law, or the law of any foreign jurisdiction from the beginning of time to the Effective Date of this Agreement. (Agreement, ¶ 3.1.)

The Released Claims include and encompass the baseless demands for vast amounts of unearned compensation and for return of hundreds of thousands of sold shares of KERV stock that Defendant is making now and threatening to go to court to try to enforce.

10.    The Released Claims that Defendant knowingly, expressly, and unequivocally released in and pursuant to the Agreement include all "Unknown Claims" against KERV and the other parties to the Agreement.  "Unknown Claims" is defined in the Agreement as follows:

"Unknown Claims" means any Released Claim(s) which the Parties do not know of or suspect to exist in his, her, or its favor at the time of the release of the released persons, including claims that, if known by him, her or it, might have affected his, her or its settlement with and released of the released persons, or might have affected his, her or its decision not to object to this settlement. Unknown Claims include those claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed.  (Agreement, ¶ 4.)

13.    In the Agreement, Defendant's explicit release and relinquishment of all of his "Released Claims" was accompanied and reinforced by Defendant's express "agree[ment] that upon the Effective Date, [he] expressly waive[d] the provisions, rights and benefits conferred by or under California Civil Code Section 1542, or any other law of the United States or any state or territory of the United States or any other state, sovereign or jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542. . . ."  (Agreement, ¶ 4.) The statutory language of Section 1542 of the California Civil Code was spelled out in paragraph 4 of the Agreement.

14.    Notably, the Agreement also included the following statement to which Defendant agreed when he executed the instrument:

/ / / / /

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

**Voluntary Execution of Agreement**.  Each of the Parties acknowledges and agrees that this Agreement has been executed voluntarily and without any duress or undue influence on the part of any other Party with the full intent of releasing and discharging all of the Released Claims. Each of the Parties hereby represents, warrants and agrees that in executing this Agreement, (a) said Party has read this Agreement; (b) said Party has had an adequate opportunity to be represented in the preparation, negotiation and execution of this Agreement by legal counsel of his/her/its own choice, has sought such legal counsel; (c) said Party fully understands the terms and consequences of this Agreement, including the Released Claims; and (d) said Party is fully aware of the legal and binding effect of this Agreement.  (Agreement, ¶ 11.)

15.     Under the terms of the Agreement, Defendant also undertook several material responsibilities and obligations to KERV, including, without limitation: (a) a duty not to disparage KERV or its management; (b) a duty not to interfere with KERV's business; and (c) a duty not to sue KERV or other contractual parties for or in connection with any of the Released Claims that Defendant released under the Agreement.

16.     Specifically, Defendant agreed "not to disparage" KERV and the various other parties to the Agreement.  (Agreement, ¶ 14.)  Defendant also agreed "not to interfere" with KERV or its "Affiliates," a term that is explicitly defined in paragraph 14 of the Agreement.

17.     Additionally, Defendant expressly "agree[d], promise[d], and covenant[ed]" that he "will not initiate, file or seek to file any legal action in a court, tribunal or any other forum" against KERV or the other parties " for any claim, known or unknown, which presently exists, existed in the past, or is presently unknown but arises out of actions or events that have occurred as of the date of this Agreement which has been released pursuant to the terms of this Agreement, but excluding any litigation that may be initiated by any party for breach of this Agreement."  (Agreement, ¶ 10.)

18.     The Agreement also gave rise to a duty of good faith and fair dealing, pursuant to which Defendant was and is obligated to deal honestly, in good faith,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

and fairly with KERV; to refrain from any act or conduct likely to deprive KERV of all or part of the consideration that is entitled to receive for and pursuant to the Agreement; and to refrain from behavior that unfairly interferes with KERV's rights to receive all of the benefits of the Agreement.

19.     In exchange for Defendant's agreement to all of the express and implied terms and conditions of the Agreement, including his release of all of his "Released Claims" and his promises and commitments to assume and honor the duties that the Agreement imposed upon him, KERV promised and agreed, among other things, to make certain specified payments to Defendant, in a total amount of twenty three thousand dollars ($23,000), according to a payment schedule that was explicitly set forth in the Agreement.  (Agreement, ¶ 2.)

20.     Specifically, under paragraph 2 of the Agreement, KERV agreed to wire Defendant "the sum of $23,000," which amount was defined in the Agreement as the "Settlement Payment."  The amount of the Settlement Payment was based upon and reflected in an invoice (entitled "Invoice 212") that was attached as an exhibit (*i.e.*, Exhibit A) to the Agreement and incorporated therein.

21.     After the Agreement was fully executed, KERV timely wired the Settlement Payment to KERV in accordance with the terms of the Agreement.

22.     KERV has fully performed and honored all of its duties to Defendant under the terms of the Agreement.

**D.     Defendant's Material Breaches of the Agreement.**

23.     Conversely, Defendant has materially defaulted on a number of his key duties under the Agreement, and is refusing to honor the Agreement going forward. Defendant's material breaches of his duties and covenants under the Agreement include, without limitation, the following:

a.     Defendant has materially breached his non-disparagement duty to KERV under paragraph 14 of the Agreement.  (Agreement, ¶ 14.)  Indeed, Defendant has sent a series of recent emails in which he not only disparaged KERV

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

and its management, but also admitted to having sent a written communication to a "group of Kerv investors" that had been critical of KERV and had "raised some concern." In an email that Defendant directed to "Kerv investors and employees" on February 11, 2023, Defendant dishonestly referred to nonexistent "evidence that corporate officers have not upheld their fiduciary responsibilities and have exposed the company to possibly severe legal consequences." In a telephone call to an attorney for KERV on February 14, 2023, Defendant's lawyer falsely accused KERV of a wide assortment of fictional misdeeds, among them supposed breach of contract, breach of the covenant of good faith and fair dealing, copyright infringement, breach of fiduciary duty, violation of the Uniform Trade Secrets Act, and fraud – while providing no evidence or factual support for any of these fabricated claims (no such evidence or factual support exists because the claims are utterly false). In an email that Defendant sent to multiple KERV investors and directors on February 16, 2023, Defendant made more untruthful, disparaging, and derogatory statements regarding KERV and its management, including the false assertion that KERV had somehow "[ripp[ed] off" Defendant. In yet another email that Defendant sent to KERV investors, shareholders and directors on February 16, 2023, Defendant falsely accused KERV of "manufactur[ing]" an email that Defendant had sent to KERV's then CFO on September 4, 2019, in which Defendant had written: "I need a statement that I am no longer employed either as an employee or contractor with Grabit Interactive Inc. . . .  and that there exists no other contracts or agreements and there is no plan for me providing future services." Defendant had in fact sent that email in 2019; his revisionist assertion that the email had somehow been "manufactured" was nothing more than a transparent attempt to rationalize the improper, groundless and dishonest financial demands that Defendant is now making for purportedly unpaid compensation for a prior period in which Defendant did not work for KERV and for which he is owed nothing. (And, in any event, Defendant released all such claims under the Agreement.)

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

b.      Defendant has materially breached his contractual duty not to interfere with KERV's business.  (Agreement, ¶ 14.)  Among other acts of interference, Defendant has sent a series of disruptive communications to KERV investors, shareholders, directors and employees, including the emails referenced in paragraph 23(a) above.  Additionally, in a telephone call with counsel for KERV on February 14, 2023, Defendant's lawyer even described Defendant's plan to take steps to interfere with KERV's relationship with a major media partner – an alliance that is critical to KERV's continued success and growth.

c.      Defendant also has materially breached his duties to KERV under the covenant of good faith and fair dealing by, among other things, knowingly and deliberately making false statements about KERV and its management; willfully making false and misleading statements concerning Defendant's past and current role in KERV – including by falsely suggesting that he continues to be actively involved in KERV's business, despite the fact that Defendant has had no active role or involvement in KERV's business operations and activities for several years; and engaging in other conduct that unfairly and dishonestly interfered with KERV's rights to receive all of the benefits of the Agreement.

**E.    Defendant's Threats to Commit Yet Additional Breaches of the Agreement and to Take Other Unlawful Action Likely to Cause Severe Harm to KERV.**

24.      In addition to the material breaches of his obligations under the Agreement described above, Defendant has threatened to commit still further breaches, and has renounced and purported to repudiate his existing and future contractual duties in a number of material ways, including, without limitation, the following:

a.      Contrary to his duties under the Agreement, Defendant has recently made a series of entirely unfounded – as well as defamatory – claims and accusations regarding KERV and its management, and has threatened to inflict

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

catastrophic harm on KERV by publicizing his spurious allegations if his improper financial demands are not met.  These financial demands – as described in an email that Defendant's lawyer transmitted to an attorney for KERV on February 16, 2023 – include, but are by no means limited to, an unfounded demand for "[t]he immediate payment of $405,000 which is calculated at $9,000.00 per month for 45 months," and "The Return of 1,870,812 Kerv shares" that Defendant previously sold in exchange for valid consideration, which was paid in full.  In an email that Defendant sent to multiple KERV employees on February 11, 2023, Defendant falsely claimed that "[a]s of May 2022 I am owed $324,000" – even though that specious claim (which never had any merit) was among those that Defendant released under the unambiguous terms of the Agreement.  In yet another email that Defendant sent to multiple KERV investors on February 18, 2023, he threatened to submit his baseless claims of supposed misconduct on the part of KERV with "state (WCIT) and federal (DOJ-FRD) white crime agencies" if his improper financial demands are not met.

       b.     Defendant also has attempted to bully and intimidate KERV by threatening that, if his improper financial demands are not met, he will pursue frivolous litigation in which he will seek to assert claims that are clearly barred and precluded by the broad releases and the covenant not to sue to which he is bound under the terms of the Agreement.  (Agreement, ¶¶ 3.1, 3.2, 4, 7, 10-11.)  Indeed, the supposed claims that Defendant is now threatening to litigate are identical to the baseless claims that he advanced in 2022 before the Agreement was signed – the very same claims that he then released under the Agreement.  As an example of one such threat, an email that Defendant sent to multiple KERV investors on February 18, 2023, referred to the "particulars of my pleadings in my forced Preliminary Injunction filing" – an obvious reference to his threatened lawsuit based upon and related to his Released Claims – and added that the "filing will be public and most certainly shocking and very concerning to many."  In another email that Defendant

addressed to "Kerv investors and employees" on February 11, 2023, he cryptically referred to "[t]he actions I'm now being forced to undertake. . . ." In a telephone conference with legal counsel for KERV on February 14, 2023, Defendant's lawyer expressly threatened that if Defendant's wild and improper financial demands are not met, Defendant will file a lawsuit against KERV and its senior executives in which Defendant will assert various claims that he clearly and explicitly released under the Agreement. In that same conversation, Defendant's lawyer also stated that if KERV does not acquiesce to Defendant's financial demands – which include his demands that KERV pay him vast additional sums that he is not owed and that nearly two million shares of stock in KERV that Defendant freely sold for fair and adequate consideration be returned to him – Defendant will seek both a "preliminary injunction" to enjoin KERV from proceeding with its alliance with one of its major media partners, and a "preliminary, pre-judgment attachment" of all of KERV's assets. Any and all such threatened litigation, as Defendant well knows, is prohibited and barred by the terms of the Agreement, including, without limitation, the releases and the covenant not to sue to which Defendant willingly, knowingly, and voluntary agreed when he executed the Agreement in July 2022.

c.     After accepting the Settlement Payment from KERV, Defendant has renounced, disavowed and repudiated the Agreement; has refused to honor his ongoing and future duties thereunder; and has invented and published specious rationalizations for his unscrupulous and avaricious behavior. For example, in one email that he sent to several KERV investors, shareholders and directors on February 16, 2023, Defendant referred to "[t]he agreements I was coerced to sign," and falsely asserted that the Agreement was "not an acts [sic] of good faith and fair dealing, was "inequitable and unfair," "had false recitals and were induced by threats." In that same email, Defendant falsely asserted that he had conferred "benefits" on KERV "without compensation," and disingenuously added: "If the contract is invalid, than the assignment is invalid. Compensation is basic

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

requirement of assignment law."

25.     As of the date of this Complaint, Defendant, to the best of KERV's knowledge, has yet to carry out the foregoing threats.  But Defendant has not rescinded those threats, and has even escalated his improper threats and unlawful demands in recent days.

26.     Defendant's unlawful and bad faith conduct, including, without limitation, his improper threats and demands as alleged above, has caused, is causing, and if not terminated will cause KERV to suffer substantial damages, including, but not limited to, significant disruptions of the ongoing work of KERV as well as further harm to KERV's business, professional relationships, and prospective opportunities.

27.     Additionally, absent the intervention of this Court, Defendant's conduct – especially if he carries out any or all of the improper threats alleged above – will cause grave and irreparable harm to KERV, its business, its operations, its reputation, its business alliances, and its other professional relationships.

## FIRST CLAIM FOR RELIEF

### (Breach of Written Contract Against Defendant)

28.     KERV incorporates the allegations set forth in Paragraphs 1 through 27 of this Complaint, inclusive, as if set forth in full herein.

29.     KERV has fully performed all conditions, covenants, and duties that it is required to perform under the Agreement, including both its express duties and its obligations under the implied covenant of good faith and fair dealing.

30.     By engaging in the conduct described above, including without limitation the specific behavior described in Paragraph 23 of this Complaint (including its subparts), Defendant has materially breached multiple obligations that he owes to KERV under the Agreement, including defaulting on a number of express covenants and obligations arising under the Agreement, as well as breaching his duties under the covenant of good faith and fair dealing arising under the

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Agreement.

31.     As a direct, foreseeable, and proximate consequence of Defendant's material breaches of his express and implied duties under the Agreement, as alleged above, KERV has been substantially damaged in an amount that will be proven at trial, which is in excess of the jurisdictional minimum of this Court.

32.     Furthermore, through his material breaches of a number of his express duties as well as his duty of good faith and fair dealing, Defendant has deprived KERV of important and material benefits that it was and is reasonably entitled to expect and receive as a result of and pursuant to the Agreement.  Defendant's actions have already caused significant harm, and if not immediately terminated, will cause serious and irreversible damage to KERV.

33.     In addition to its entitlement to an award of monetary damages, KERV is entitled to an award of specific performance with respect to Defendant's material breaches of, and failures and refusal to perform, his obligations under the Agreement.

34.     KERV's remedy at law is inadequate because monetary damages, while critical and necessary, are insufficient to compensate KERV for Defendant's improper conduct.  Moreover, such behavior, if it continues, will result in grave and irreversible harm to (a) KERV's business and operations; (b) KERV's reputation; and (c) KERV's relationships with its existing and prospective clients and partners. The terms of the Agreement are sufficiently definite to enable the Court to enforce Defendant's obligations, and nothing in the Agreement bars a specific performance remedy.

## SECOND CLAIM FOR RELIEF

### (Anticipatory Breach of Contract Against Defendant)

35.     KERV incorporates the allegations set forth in Paragraphs 1 through 34 of this Complaint, inclusive, as if set forth in full herein.

36.     In addition to committing the material breaches of his obligations

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

under the Agreement that are alleged above, Defendant has repudiated the Agreement and anticipatorily breached certain of his remaining and future obligations thereunder by, among other things:

a.      declaring his intention to commence litigation against KERV relating to the Released Claims, notwithstanding the fact that any such lawsuit would constitute a violation of Defendant's express and implied obligations under the Agreement, including without limitation his duty, promise and covenant not to "initiate, file or seek to file any legal action in a court, tribunal or any other forum" against KERV " for any claim, known or unknown, which presently exists, existed in the past, or is presently unknown but arises out of actions or events that have occurred as of the date of this Agreement which has been released pursuant to the terms of this Agreement, but excluding any litigation that may be initiated by any party for breach of this Agreement." (Agreement, ¶ 10.);

b.      repudiating, disavowing, and denying the validity and binding effect of the Agreement in its entirety, and informing KERV that Defendant was refusing and would refuse in the future to honor or perform the ongoing or future duties that he continues to owe or will owe to KERV under the Agreement.  Indeed, in an email that he sent to KERV investors on February 18, 2023, Defendant – in a clear reference to, and transparent attempt to rationalize, his refusal to honor his obligations under the Agreement – falsely asserted that he had been "coerced to sign" the Agreement (and his earlier contracts with KERV), and that the "basic premise" of the Agreement was somehow "inequitable and unfair"; and

c.      conditioning his performance of his ongoing and future duties under the Agreement on KERV's acquiescence to Defendant's improper demand, including, but not limited to, Defendant's improper demands that KERV pay him vast additional sums that he is not owed and return to him hundreds of thousands of shares of stock in KERV that Defendant freely sold for fair and adequate consideration.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

37.     At all times relevant hereto, KERV has fully performed all conditions, covenants, and duties that it has been required to perform under the Agreement, despite Defendant's breach and repudiation of his duties under the Agreement.

38.     As a direct and proximate result of Defendant's anticipatory breaches and repudiation of, and refusal to perform, his obligations under the Agreement, as alleged above, KERV has been and will be substantially damaged in an amount to be proven at trial.  The amount of KERV's damages is well in excess of the jurisdictional minimum of this Court.

39.     In addition to its entitlement to an award of monetary damages, KERV is entitled to an award of specific performance with respect to Defendant's anticipatory breach and repudiation of, and refusal to perform, his obligations under the Agreement.  KERV's remedy at law is inadequate because monetary damages, while critical and necessary, are themselves insufficient to compensate KERV for Defendant's improper conduct and repudiations of his contractual duties.  Moreover, such conduct, if it continues, will result in grave and irreversible harm to (a) KERV's business and operations; (b) KERV's reputation; and (c) KERV's relationships with its actual and prospective clients and partners.  The terms of the Agreement are sufficiently definite to enable the Court to enforce Defendant's obligations, and nothing in the Agreement bars a specific performance remedy.

## THIRD CLAIM FOR RELIEF

### (Declaratory Relief Against Defendant)

40.     KERV incorporates the allegations set forth in Paragraphs 1 through 39 of this Complaint, inclusive, as if set forth in full herein.

41.     An actual controversy has arisen and now exists between KERV and Defendant concerning the parties' respective rights and obligations under the Agreement.

42.     KERV contends that the Agreement is a valid and binding contract, and that Defendant must abide by the Agreement, including, but not limited to,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

Defendant's non-disparagement and non-interference obligations thereunder, and Defendant's duty not to commence any lawsuit or bring any claim or alleged cause of action concerning or arising from any of the Released Claims that Defendant released under the Agreement.  Defendant contends otherwise.

43.     KERV seeks a judicial determination of its rights and Defendant's duties under the Agreement, including whether KERV's interpretation of the Agreement is correct.  Specifically, KERV requests a judicial determination of KERV's rights and Defendant's obligations under the Agreement, including, without limitation, a judicial declaration that:

a.      The Agreement is a valid and binding contract, and Defendant remains bound to its terms, conditions and requirements;

b.      Defendant's obligations under the Agreement include a legally binding and continuing duty "not to disparage" KERV or its management (Agreement, ¶ 14.);

c.      Defendant's duties and obligations under the Agreement include a legally binding and continuing duty "not to interfere" with KERV or its "Affiliates" (Agreement, ¶ 14.); and

d.      Defendant's duties and obligations under the Agreement include a legally binding and continuing duty not to "initiate, file or seek to file any legal action in a court, tribunal or any other forum" against KERV based upon or relating to any of the Released Claims that Defendant released under the Agreement. (Agreement, ¶ 10.)

44.     The requested judicial declaration of the rights and duties of the parties is necessary and proper at this time in view of the actual, ripe controversy that presently exists between KERV and Defendant, which controversy is incapable of resolution without judicial adjudication.  Moreover, KERV has no plain, speedy or adequate remedy at law.

/ / / / /

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

## **FOURTH CAUSE OF ACTION**

### **(For Injunctive Relief Against Defendant)**

45.     KERV incorporates the allegations set forth in Paragraphs 1 through 44 of this Complaint, inclusive, as if set forth in full herein.

46.     As a result of Defendant's conduct as alleged above, KERV has suffered and will suffer severe, immediate and irreparable harm by, among other injuries, sustaining enormous and permanent damage to its reputation, its professional alliances and relationships, and its business and operations; being forced to defend a frivolous lawsuit that Defendant has threatened to initiate in contravention of his contractual duties, based upon spurious and founded claims that Defendant clearly and unequivocally released under the plain language of the Agreement; and otherwise being deprived of the benefits and consideration of its contractual bargain with Defendant.

47.     Injunctive relief is proper and warranted because KERV has no adequate remedy at law, and the injuries that Defendant's ongoing and threatened conduct have caused and will cause KERV to suffer will be substantial, irreparable, and not susceptible to precise calculation at this juncture.

48.     Accordingly, KERV has a legal right to temporary, preliminary and permanent injunctive relief that orders Defendant to honor the Agreement and perform all of his obligations under the Agreement; enjoins and prohibits Defendant from disparaging KERV and its management; enjoins and prohibits Defendant from interfering with KERV or its business, professional relationships, or prospective opportunities; and enjoins and prohibits Defendant from initiating any claim or lawsuit against KERV based upon or relating to the Released Claims.

## **PRAYER FOR RELIEF**

**WHEREFORE**, KERV respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

/ / / / /

**On The First and Second Causes Of Action**:

1.      For actual and compensatory damages in excess of the jurisdictional minimum of this Court, in an amount to be determined at trial; and

2.      For an award of specific performance requiring Defendant to perform all of his express and implied obligations under the Agreement, including, but not limited to, Defendant's duties: (a) "not to disparage" KERV or its management (Agreement, ¶ 14.); (b) "not to interfere" with KERV or its "Affiliates" (Agreement, ¶ 14.); and (c) not to "initiate, file or seek to file any legal action in a court, tribunal or any other forum" against KERV based upon or relating to any of the Released Claims that Defendant released under the Agreement.(Agreement, ¶ 10.)

**On The Third Cause Of Action:**

3.      For a declaratory judgment and adjudication of KERV's rights and Defendant's obligations under the Agreement, including, without limitation, a judicial declaration that: (a) the Agreement is a valid and binding contract, and Defendant remains bound to its terms, conditions and requirements; (b) Defendant's duties and obligations under the Agreement include a legally binding and continuing duty "not to disparage" KERV or its management (Agreement, ¶ 14.); (c) Defendant's duties and obligations under the Agreement include a legally binding and continuing duty "not to interfere" with KERV or its "Affiliates" (Agreement, ¶ 14.); and (d) Defendant's duties and obligations under the Agreement include a legally binding and continuing duty not to "initiate, file or seek to file any legal action in a court, tribunal or any other forum" against KERV based upon or relating to any of the Released Claims that Defendant released under the Agreement.(Agreement, ¶ 10.)

**On The Fourth Cause Of Action**:

4.      For temporary, preliminary and permanent injunctive relief ordering Defendant to perform all of his obligations under the Agreement; and enjoining and

prohibiting Defendant from (a) disparaging KERV and its management; (b) interfering with KERV or its business operations, professional relationships, or opportunities; (c) initiating or bringing any claim or lawsuit against KERV based upon or relating to any of the Released Claims that Defendant released under the Agreement; and/or (d) denying the validity or binding effect of the Agreement, or refusing to perform any and all of his continuing or future obligations thereunder.

**On All Causes Of Action:**

5.      For an award of the reasonable attorneys' fees and expenses that KERV has incurred and will incur in connection with this action, pursuant to and in accordance with the attorneys' fees and costs provision in the Agreement (*see* Agreement, ¶ 24); and

6.      For all costs of suit herein;

7.      For prejudgment and postjudgment interest at the legal rate subject to proof; and

8.      For such other and further relief as the Court deems just and proper.

Dated: February 24, 2023                    SAUL D. BRENNER
                                            KYLE PETERSEN
                                            LOEB & LOEB LLP

By:_____

                                            SAUL D. BRENNER
                                            Attorneys for Plaintiff GRABIT
                                            INTERACTIVE MEDIA, INC., a
                                            Delaware corporation, doing business as
                                            KERV or KERV INTERACTIVE

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

## **DEMAND FOR A JURY TRIAL**

KERV demands trial by jury for all issues so triable.

Dated: February 24, 2023

SAUL D. BRENNER
KYLE PETERSEN
LOEB & LOEB LLP

By:_____

SAUL D. BRENNER
Attorneys for Plaintiff
GRABIT INTERACTIVE MEDIA,
INC., a Delaware corporation, dba
KERV or KERV INTERACTIVE

COMPLAINT

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

# EXHIBIT 1

**CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE**

THIS CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE (this "Agreement") is made and entered into on or prior to July 15, 2022 ("Effective Date") by and among: (i) Grabit Interactive Media, Inc., a Delaware corporation dba KERV ("KERV"), (ii) Dan Bienenfeld, an individual ("Bienenfeld"); (iii) Gary Mittman, an individual ("Mittman"), (iv) Digital Consultants, Inc., a California corporation ("Digital Consultants"), (v) Convergence Holdings, LLC, a California limited liability company ("Convergence"), and (vi) Andrew Welch, an individual ("Welch").  KERV, Bienenfeld, Mittman, Digital Consultants, Convergence, and Welch are collectively referred to as the "Parties," and a "Party" in the singular.  This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims, as defined below, subject to the terms and conditions set forth herein. This Agreement is entered into with regard to the following fact (the "Recitals"):

RECITALS

A.  WHEREAS, Welch performed certain consulting services for KERV which services were compensated;

B.  WHEREAS, Welch asserts that he is owed additional payment for such services;

C.  WHEREAS, there is no written agreement between KERV and Welch with respect to the alleged services, including the scope, rate, payment, and/or other terms, if any; and

D.  WHEREAS there are substantial controversies and disputes that have arisen between and among the Parties.  The Parties desire to fully and finally settle and resolve all of their respective claims, cross-claims and defenses that have been or could be asserted by or against each other in any way arising out of, or existing by virtue of, any of the acts, circumstances or events concerning the services performed by Welch for KERV, and including the scope, rate, payment, and/or other terms, if any (collectively referred to as the "Dispute") without admission of fault or culpability by any Party, in order to avoid time-consuming and costly litigation.

E.  WHEREAS the closing of the Settlement will take place no later than July 15, 2022.

WITNESSETH

NOW, THEREFORE, in consideration of the mutual promises and covenants, releases, and payments set forth herein below, and other good and valuable consideration, the sufficiency of which is hereby acknowledged, each of the Parties agrees as follows:

1.  **Incorporation of Recitals.**  The Recitals above are true and correct and are hereby incorporated by reference as contractual terms of this Agreement.

2.  **Payment of Invoice.**  As soon as practical after the execution and delivery of this Agreement by the Parties, but not later than three business days (days other than a Saturday, Sunday or banking holiday in Southern California) after the Effective Date, KERV shall pay Welch

the sum of $23,000 set forth in Invoice 212 attached hereto as **Exhibit A**, with the payment wired to:

> Andrew Welch
> Routing # 121201694
> Account # ▓▓▓▓▓▓0916
> Bank Address: US Bank, PO Box 64830, Saint Paul MN 55164

(the "Settlement Payment").

**3.     Mutual Releases.**

**3.1     Definition of "Released Claims":** As used in this Agreement, the term, "Released Claims," means any and all claims or causes of action (including Unknown Claims as defined below), debts, demands, disputes, rights, suits, matters, issues, damages, obligations or liabilities of any kind, nature, and/or character whatsoever (including, but not limited to, any claims for damages, interest, attorneys' fees, expert or consulting fees, and any and all other costs, expenses or liabilities whatsoever), whether known or unknown, whether under federal, state, local, statutory, common law, foreign law, or any other law, rule or regulation, whether fixed or contingent or absolute, accrued or unaccrued, liquidated or unliquidated, at law or in equity, matured or unmatured, discoverable or undiscoverable, asserted or that have been, could or might have been, or in the future might be asserted by the releasing party against the released persons or entities based upon, arising out of, or related to the facts, transactions, events, occurrences, statements, alleged mismanagement and/or misconduct, acts, omissions, or failures to act, concealment, misrepresentation, violation of law or other matter which was or could have been alleged in or embraced or otherwise referred to or encompassed by the Dispute, regardless of upon what legal theory based, including, without limitation, claims for negligence, gross negligence, recklessness, fraud, breach of fiduciary duty, breach of duty of care and/or loyalty or violations of the common law, administrative rule or regulation, tort, contract, equity, or otherwise of any state or federal statutes, rules, or regulations or common law, or the law of any foreign jurisdiction from the beginning of time to the Effective Date of this Agreement, but expressly excluding the rights and obligations created by or arising from this Agreement and the Exhibits attached hereto.

**3.2     Release by Welch to KERV, Bienenfeld, Mittman, Digital Consultants, and Convergence.**  Subject to the exclusions set forth in Section 3.1 above and full payment to Welch of the Settlement Payment, Welch hereby irrevocably, unconditionally, completely and forever releases and discharges the Released Claims against KERV, Bienenfeld, Mittman, Digital Consultants, and Convergence and each of their respective current and former directors, officers, shareholders, members, partners, owners, employees, independent contractors, consultants, experts, attorneys, insurers, representatives, agents, subsidiaries, affiliates, parent corporations, heirs, executors, administrators, trusts, trustees, professional advisors, spouses, family members, principals, predecessors, successors and assigns, and significant others.

**3.3     Release by KERV, Bienenfeld, Mittman, Digital Consultants, and Convergence to Welch.**  Subject to the exclusion set forth in Section 3.1 above, each of KERV, Bienenfeld, Mittman, Digital Consultants, and Convergence hereby irrevocably, unconditionally,

DocuSign Envelope ID: B28D53F6-564C-4978-9A32-F53AC38564ED

completely and forever releases and discharges the Released Claims against Welch, and his current and former directors, officers, shareholders, members, partners, owners, employees, independent contractors, consultants, experts, attorneys, insurers, representatives, agents, subsidiaries, affiliates, parent corporations, heirs, executors, administrators, trusts, trustees, professional advisors, spouses, family members, principals, predecessors, successors and assigns, and significant others.

4.    **Release of Unknown Claims.**  "Unknown Claims" means any Released Claim(s) which the Parties do not know of or suspect to exist in his, her, or its favor at the time of the release of the released persons, including claims that, if known by him, her or it, might have affected his, her or its settlement with and released of the released persons, or might have affected his, her or its decision not to object to this settlement.  Unknown Claims include those claims in which some or all of the facts comprising the claim may be suspected, or even undisclosed.  With respect to any and all Released Claims, the Parties agree that upon the Effective Date, they expressly waive the provisions, rights and benefits conferred by or under California Civil Code Section 1542, or any other law of the United States or any state or territory of the United States or any other state, sovereign or jurisdiction, or principle of common law, which is similar, comparable, or equivalent to Section 1542, which provides:

> **"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."**

The Parties agree that this Agreement will remain in effect as a general release, notwithstanding any additional or different facts the Parties or their attorneys may discover about the Released Claims. In this regard, the Parties acknowledge that he/she/it is aware that they and/or their attorneys may hereafter discover claims or facts in addition to or different from those which the Parties now know or believe to exist with respect to the subject matter of this Agreement, and it is the Parties' intention hereby to fully, finally, and forever settle and release all possible claims they may have against each other.  Further, it is expressly understood that notwithstanding the discovery or existence of any such additional or different claims or facts, the releases given herein shall be and remain in effect as a full and complete release with respect to all claims released hereunder. As set forth in Section 6.1 above, notwithstanding the foregoing the releases provided herein shall not release the rights and obligations created by or arising from this Agreement and the Exhibits attached hereto.

5.    **Covenant Regarding Confidentiality.** The Parties expressly promise and agree that the existence and terms of this Agreement shall remain confidential and shall not be disclosed to any other individual or entity, other than: (a) in response to an order of a court, or state or federal agency, of competent jurisdiction if a copy of each such order is delivered to the undersigned counsel for the other Party promptly after that Party receives it; (b) in response to a subpoena or demand for production of documents lawfully issued and served upon a Party in a civil or

government legal proceeding if a copy of each such subpoena or demand is delivered to the undersigned counsel for a Party promptly after the other Party receives it; (c) to the extent necessary to report income to the appropriate taxing authorities; (d) to the Parties' legal, tax and financial advisors who shall also be advised of its confidentiality and who shall agree to be bound by this confidentiality agreement; (e) to the extent disclosure is necessary to the Parties' insurers in connection with seeking D&O, E&O or similar insurance; and/or (f) to the extent necessary to enforce the provisions of this Agreement.

　　　　6.　　　**Notices.**　Any notice under this Section shall be given by messenger with record of delivery, or overnight mail with proof of mailing or receipt, with a courtesy email copy to the Parties and their counsel, as follows:

| To Welch: | To KERV: |
|---|---|
| ▮▮▮▮▮▮▮▮▮▮▮<br>Burbank, CA  91605<br><br>awelch@awatv.com | 10900 Research Blvd., Ste, 160C<br>Austin, TX  78759<br><br>gmittman@kervit.com |
| To Bienenfeld:<br><br>▮▮▮▮▮▮▮▮▮▮<br>Westlake Village, CA  91362<br><br>dbien@kervit.com | To Mittman or Digital Consultants:<br><br>▮▮▮▮▮▮▮<br>Los Angeles, CA  90034<br><br>gmittman@kervit.com |
| To Convergence:<br><br>638 Lindero Canyon Rd.<br>Oak Park, CA  91377<br><br>info@convergenceholdings.com | |

or to such other person and/or address as the Parties may specify from time to time by the same methods as provided for above.

　　　　7.　　　**Compromise and Settlement of Disputed Claims.**　This Agreement represents a compromise and settlement of disputed claims and is not to be deemed or construed to be an admission of liability or of the truth of any fact on the part of any Party.  The Parties expressly

deny liability for any and all such claims made against them, and by this Agreement intend merely to avoid litigation costs.

**8.     No Other Action; No Knowledge of Basis of Claim.**   Each of the Parties represents and warrants to each of the other Parties that no action is pending or contemplated by, between or among any of the Parties.

**9.     No Assignment of Released Claims.**   Each of the Parties hereby represents and warrants that he/she/it is the sole owner and beneficiary of his/her/its respective Released Claims, that he/she/it has not made any sale, assignment, transfer, conveyance or other disposition of said Released Claims, voluntarily, involuntarily or by operation of law, and that any such sale, assignment, transfer, conveyance or other disposition of said Released Claims or any part thereof is void and of no effect.  Each of the Parties agrees to indemnify and save harmless all of the other Parties from and against any loss, claim, expense (including, without limitation, reasonable attorneys' fees paid or incurred), demand or cause of action of any kind or character arising out of or in connection with the breach by such Party of any of the representations and warranties contained herein.

**10.     Covenant Not to Sue.**   The Parties agree, promise, and covenant to each other that they will not initiate, file or seek to file any legal action in a court, tribunal or any other forum against the other, for any claim, known or unknown, which presently exists, existed in the past, or is presently unknown but arises out of actions or events that have occurred as of the date of this Agreement which has been released pursuant to the terms of this Agreement, but excluding any litigation that may be initiated by any party for breach of this Agreement.

**11.     Voluntary Execution of Agreement.**   Each of the Parties acknowledges and agrees that this Agreement has been executed voluntarily and without any duress or undue influence on the part of any other Party with the full intent of releasing and discharging all of the Released Claims.   Each of the Parties hereby represents, warrants and agrees that in executing this Agreement, (a) said Party has read this Agreement; (b) said Party has had an adequate opportunity to be represented in the preparation, negotiation and execution of this Agreement by legal counsel of his/her/its own choice, has sought such legal counsel; (c) said Party fully understands the terms and consequences of this Agreement, including the Released Claims; and (d) said Party is fully aware of the legal and binding effect of this Agreement.

**12.     No Reliance Upon Representations.**   Each of Party hereby represents, warrants and agrees as to itself that said Party is not relying, and has not relied, upon any representation, warranty or statement, oral or written, made by any other Party, except as to those representations, warranties, covenants and acknowledgements expressly set forth herein.

**13.     Construction of this Agreement.**   This Agreement shall be construed without regard to the Party or Parties responsible for the preparation of the same and shall be deemed to have been prepared jointly by the Parties.  Any rule of law, including, but not limited to, any statutory provision (e.g., Civil Code § 1654) and/or legal decision that would require interpretation of any ambiguities in this Agreement against the Party that has drafted it is not applicable and is expressly waived by each of the Parties. The provisions of this Agreement shall be interpreted in

DocuSign Envelope ID: B28D53F6-564C-497B-9A33-F53AC38F64ED

a reasonable manner to effect the purposes of the Parties and this Agreement according to the application of other rules of contract interpretation, if any ambiguity or uncertainty exists.

14.   **Non-Disparagement; Non-Interference.**  The Parties agree not to disparage each other; provided that nothing in this Section limits the privilege provisions of Civil Code Section 47 and/or any other privileges under applicable law.  The Parties agree not to interfere with each other or their respective Affiliates.  For the purpose of this Agreement, "Affiliate" means with respect to any Person, any other Person directly or indirectly controlling, controlled by or under common control with, the Person to which such term is applied.  For the purpose of this Agreement, "Person" means a natural person, partnership, corporation, limited liability company, trust, estate, association, joint venture, unincorporated organization, governmental or regulatory body, agency or authority, nominee or any other entity.

15.   **No Admission of Liability**.  The Parties intend this settlement to be a final and complete resolution of all disputes between them with respect to the Released Claims, and the Dispute. The Settlement comprises claims that are contested and shall not be deemed an admission by any Party as to the merits of any claim, allegation, or defense.  The Parties further agree that the claims are being settled voluntarily after consultation with competent legal counsel.

16.   **Section Headings.**   Section headings contained in this Agreement are for convenience only and shall not be considered for any purpose in construing this Agreement.

17.   **Invalid, Void and/or Unenforceable Terms.**   If any of the provisions of this Agreement are held by a court of competent jurisdiction to be invalid, void, unenforceable, and/or contrary to public policy or law, the remaining provisions shall nonetheless be unaffected and will continue in full force and effect without any impairment or invalidation.

18.   **Authority to Sign This Agreement.**  Each of the Parties represents and warrants that he/she/it has the authority to sign this Agreement below.  Each person signing this Agreement on behalf of a corporate party represents and warrants that said individual is authorized to do so on behalf of such corporation and has obtained all necessary approvals of the shareholders and/or board of directors, if any.

19.   **Binding Effect.**  This Agreement shall be binding on, and shall inure to the benefit of, the respective legatees, devisees, heirs, executors, administrators, assigns and successors in interest of the Parties.

20.   **Waiver.**  No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall such waiver constitute a continuing waiver.  No waiver shall be valid unless the same is in writing and signed by all of the Parties and this requirement may not be waived in any manner except as set forth herein.

21.   **Modification or Amendment.**  This Agreement may be modified or amended only by an agreement in writing signed by all of the Parties, or their respective successors-in-interest and this requirement may not be waived in any manner except as set forth herein.

**22.**   **Additional Documents and Acts.**   Each Party shall, at the request of another, acknowledge, sign and deliver whatever additional instrument, and do such other acts, as may be reasonably requested, necessary or convenient to carry out the intent and purpose of this Agreement.

**23.**   **Governing Law.**   The interpretation and construction of this Agreement, and all matters relating hereto, shall be governed by the laws of the State of California applicable to contracts made and to be enforced entirely within the State of California without giving effect to any conflict of law provisions thereof.

**24.**   **Attorneys' Fees and Costs.**   In any action brought to enforce or interpret the provisions of this Agreement, the prevailing Party shall be entitled to reasonable attorneys' fees and costs in addition to any other relief to which it is entitled.

**25.**   **Counterparts.**   This Agreement may be signed in several counterparts, each of which shall be deemed an original and all of which together shall constitute the Agreement notwithstanding the fact that all of the Parties have not been signatories either on the same date or to the same counterpart.  A facsimile or .pdf (or similar reliable electronic image) copy of the signed/initialed Agreement and/or counterpart shall be deemed the same as an original with ink signature/initials.

**26.**   **Entire Agreement.**   This Agreement and the Exhibits attached hereto constitute the entire agreement among the Parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral and written agreements and discussions.

**EACH OF THE UNDERSIGNED ACKNOWLEDGES THAT HE OR SHE OR IT HAS CAREFULLY READ AND FULLY UNDERSTANDS THE CONTENTS OF THIS AGREEMENT AND HAS CONFERRED WITH LEGAL COUNSEL BEFORE SIGNING IT.**

[Signatures on Next Page]

**IN WITNESS WHEREOF, THE PARTIES HAVE SIGNED AND DELIVERED THIS AGREEMENT AS OF THE EFFECTIVE DATE FIRST WRITTEN ABOVE.**

By: _Andrew Welch_____     Date Signed: July 7/13/2022 ___, 2022
Name: Andrew Welch, an individual


GRABIT INTERACTIVE MEDIA, INC.
dba KERV

By: _Gary Mittman_____     Date Signed: July 7/13/2022 ___, 2022
Name: Gary Mittman
Title: CEO


By: _Dan Bienenfeld_____     Date Signed: July 7/13/2022 ___, 2022
Name: Dan Bienenfeld, an individual

By: _Gary Mittman_____     Date Signed: July 7/13/2022 ___, 2022
Name: Gary Mittman, an individual


DIGITAL CONSULTANTS, INC.

By: _Gary Mittman_____     Date Signed: July 7/13/2022 ___, 2022
Name: Gary Mittman
Title: CEO


CONVERGENCE HOLDINGS, LLC

By: _Dan Bienenfeld_____     Date Signed: July 7/13/2022 ___, 2022
Name: Dan Bienenfeld
Title: Manager

By: _Gary Mittman_____     Date Signed: July 7/13/2022 ___, 2022
Name: Gary Mittman
Title: Manager


8

## **EXHIBIT A**
<u>See Attached Invoice 212</u>

**EXHIBIT A TO SETTLEMENT AGREEMENT**

**Final Invoice to Kerv Interactive - PATENT a**          **Expense Reimbursement Request**

| | |
|---|---|
| | **Invoice #** **212** |

Andrew Welch
1828 N. Ontario Street
Burbank, CA 91505

| |
|---|
| *Expense Period Start Date* |
| 5/30/2019 |
| *Expense Period End Date* |
| 6/1/2022 |

| Date | Qty | Description | Unit Cost | Amount |
|------|-----|-------------|-----------|--------|
| | 101 | US Patent 11,272,256 - Issued March 8, 2022 | 200.00 | ####### |
| | 14 | U.S. Trademark 6,142,488 - Issued September 1, 2020 | 200.00 | 2800.00 |
| | | | | |
| | | | **Total Amount:** | $23,000.00 |

BANK INFORMATION:
Andrew Welch
Routing # 121201694
Account # ██████0916
Bank Address: US Bank, PO Box 64830, Saint Paul MN 55164